### In re EMERSON MINING CO.

(District Court, N. D. Georgia. December 11, 1908.)

SALES (§ 473*)—CONDITIONAL SALES—FAILURE TO RECORD.

Where a contract for the sale of machinery, reserving title in the seller until payment, was not recorded like a chattel mortgage in the county where the machinery was placed and kept, as required by Civ. Code Ga. 1895, § 2777, the reservation was invalid as against a purchaser of an interest in the property without notice; but as to the remaining interest, on which such purchaser took a chattel mortgage, which he also failed to record, it was entitled to priority because prior in time.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1384; Dec. Dig. § 473.*]

------

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. On intervening petition.

J. M. Wood, for Cincinnati Equipment Co.
Henderson Halman, for Edward McDowell.

NEWMAN, District Judge. The question for determination here
arises on the intervening petition of Edward McDowell in the above-
stated bankruptcy case. The contest is over a steam shovel sold by
the Cincinnati Equipment Company to the Emerson Mining Company
on November 25, 1905, with a written reservation of title. The home
of the Emerson Mining Company is in Fulton county, but its plant
and the place where the steam shovel was located at and before the
time bankruptcy proceedings were instituted is in Bartow county.
The paper containing the reservation of title was not recorded in Ful-
ton county until June 23, 1906, more than six months after the shovel
was sold, and was not recorded in Bartow county until the 7th day of
September, 1907, after the petition in bankruptcy was filed. The stat-
ute of Georgia (Civ. Code 1895, § 2777) provides that conditional bills
of sale to personalty must be recorded in Georgia in the same manner
as mortgages on personalty are recorded.

It was necessary, to make this condition sale effective, that the paper
containing the reservation of title to the steam shovel should have
been recorded both in Fulton county and Bartow county. The statute
of Georgia provides for the record of mortgages on personalty in the
county where the mortgagor lives, and also in the county where the
mortgaged property is located. If the personalty is out of the state
when the mortgage is executed, and is afterwards brought into the
state, the same rule applies, except that it should be recorded within
six months after the property is brought into the state. This paper
containing the reservation of title was executed, as I understand it,
before the property was brought into Georgia. It is immaterial about
this, however, for in any event the paper was not properly recorded.

On January 14, 1907, the Emerson Mining Company executed and
delivered to Edward McDowell the following paper:

"Whereas, there has been paid to us by Edward McDowell, of Atlanta, Ga.,
the sum of twenty-four hundred dollars ($2,400), the receipt whereof is here-
by acknowledged, we hereby sell and transfer unto the said McDowell, with
full warranty of title, a two-thirds (⅔) undivided interest in a certain Bay
State steam shovel, now on the Jones iron ore property, being operated by this
company and located near Emerson, Bartow county, Georgia."

On July 6, 1907, the Emerson Mining Company gave to McDowell
the following paper:

"Whereas, Edward McDowell, of Atlanta, Georgia, is making advances of
money to the Emerson Mining Company (operating near Emerson, Bartow
county, Georgia), and is otherwise a creditor of said company: Now, in con-
sideration of the above, the said Emerson Mining Company by its president
hereby sells and transfers to the said McDowell its one-third (⅓) interest in
the Bay State steam shovel, now in use at the iron ore mine being operated
near Emerson, Ga., by said company; the intention of this bill of sale being
to secure said McDowell against possible loss of any of the above indebted-
ness. However, when the said Emerson Mining Company shall have discharg-
ed the indebtedness or obligations to said McDowell, then this instrument
shall be canceled or become void."

Checks are in evidence, given by McDowell to the Emerson Mining Company, indorsed and collected by that company, as follows: October 29, 1906, $500; November 15, 1906, $700; November 20, 1906, $600; January 14, 1907, $600.

The difference between the two papers given McDowell by the Emerson Mining Company, as set out above, is apparent at a glance. The first paper gives to McDowell an absolute unconditional title to two-thirds undivided interest in the steam shovel. The second paper shows that it was given to secure an indebtedness, and must clearly be construed as a mortgage, or a bill of sale to secure a debt, having practically the same effect as a mortgage. Neither of these papers was recorded.

While there is some contention here that at the time these papers were executed and delivered to McDowell he was put in possession of such facts as would have caused him, by reasonable inquiry, to know that the title to the steam shovel was in the Cincinnati Equipment Company, I do not think that this contention can be sustained. It cannot be fairly concluded from the evidence that McDowell had such knowledge as would put him on notice of the contract between the Cincinnati Equipment Company and the Emerson Mining Company; that is, of the reservation of title. So, in my judgment, the rights of McDowell as against those of the Cincinnati Equipment Company must be determined by the construction placed on the papers executed and delivered to him by the Emerson Mining Company.

The first paper, conveying to him absolutely and unconditionally a two-thirds undivided interest in the steam shovel, is such that as to this two-thirds interest his right prevails over that of the Cincinnati Equipment Company. As to the last paper, which I construe to be merely a mortgage, it not being recorded, and the paper containing the reservation of title in the Cincinnati Equipment Company not being recorded, the rule, "First in time, first in right," should be applied, and the right of the Cincinnati Equipment Company is greater than that of McDowell.

It has been contended here that the fact that the last paper executed was a mere mortgage should throw light upon and give color to the first paper executed, and that it indicates as to both a mere intention to secure a debt due to McDowell. I do not think so. In the last paper the Emerson Mining Company conveyed to McDowell "its one-third interest in the steam shovel," etc., showing that the only title it then claimed to have in the steam shovel was this one-third interest. Why the papers should have been made in this way, and why the transaction occurred as it did, we are not informed by the evidence; but, for some reasons unknown to the court, we see that title to the two-thirds undivided interest was conveyed to McDowell unconditionally, and that the other one-third interest was mortgaged to secure a debt. I do not think any other construction can properly be given these papers, and therefore the decision of the referee will be modified to this extent, and a decree may be taken that McDowell had and has a two-thirds undivided interest in the steam shovel, and the Cincinnati Equipment Company has a one-third undivided interest.

The action of the referee as to the payment and apportionment of costs should be modified in accordance with the conclusions reached here as to the rights of the parties.